UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT BOZSAN,                    :          NO. 1:03-CV-00482
                                  :
        Plaintiff,                :
                                  :
    v.                            :          **OPINION AND ORDER**
                                  :
                                  :
TRADEWINDS BEVERAGE               :
    COMPANY,                      :
                                  :
        Defendant.                :


        This matter is before the Court on Defendant's Motion
for Summary Judgment (doc. 11), Plaintiff's Memorandum in
Opposition (doc. 15), and Defendant's Response (doc. 17).  The
Court held a hearing in this matter on November 18, 2004.

**BACKGROUND**

        Defendant Tradewinds Beverage Company (hereinafter
"Tradewinds") manufactures and distributes tea and juice products
(doc. 11).  Plaintiff Robert Bozsan previously served as the
Vice-President of Sales for Tradewinds (Id.).  Plaintiff was
hired in November, 1994, by Hudepohl-Schoenling Brewing Company
(hereinafter "Hudepohl"), Defendant's predecessor, which
manufactured and distributed both beer and tea products (Id.).
Following a number of structural changes in 1999, Hudepohl
discontinued beer manufacturing (Id.).  Tradewinds was
incorporated as an independent, close corporation in May, 1999

(<u>Id</u>.).  Plaintiff remained Vice-President of Sales, an at-will employment position under the terms of the Tradewinds Employee Handbook (<u>Id</u>.).  Additionally, Plaintiff served as a director and minority shareholder of Tradewinds (<u>Id</u>.).  In his position as Vice-President of Sales, Plaintiff reported directly to Kenneth Lichtendahl, the President and Chief Executive Officer of Tradewinds (<u>Id</u>.).

According to Plaintiff, Kenneth Lichtendahl acknowledged that Plaintiff had the requisite background for the position (doc. 15).  Plaintiff further notes that both Tim Brown (hereinafter "Brown"), Sales Manager of National Accounts, and Casey Lichtendahl, Director, noted that Plaintiff was a good supervisor and was committed to Tradewinds (<u>Id</u>.).  Moreover, in March, 2000, Casey Lichtendahl offered considerable praise for Plaintiff's presentation to the Board of Directors, characterizing the presentation as approaching "'world-class work'" (<u>Id</u>.).

According to Defendant, Plaintiff's duties at Tradewinds included managing the sales force, calling on customers and distributors, and keeping promotional and marketing expenses to a minimum (doc. 11).  Defendant maintains that Plaintiff acknowledged that it was his responsibility to meet the goals set forth in the annual plan (<u>Id</u>.).  Defendant also claims

2

that Plaintiff recognized that it was partially his responsibility to increase Tradewinds' sales and overall profitability (Id.). Furthermore, Plaintiff was responsible for the preparation of an annual business plan, which was presented to the Board of Directors, detailing sales and promotional expense goals (Id.). Plaintiff was kept informed of Tradewinds' performance through directors meetings, monthly financial reports, and annual financial reports prepared by company accountants (Id.).

Plaintiff's sales goal for 2000 was 1.58 million cases, and promotional expenses were to be at or below $.30 per case; these goals were approved by the management team (Id.). Actual sales in 2000 were 1.255 million cases, and promotional expenses averaged $.33 per case (Id.). Defendant sustained a net loss of $244,000.00 in 2000 (Id.). Plaintiff acknowledged in deposition testimony that he bears at least some responsibility for the net loss and promotional expenses (Id.).

Plaintiff's sales goal for 2001 was 1.507 million cases, and promotional expenses were to be at or below $.30 per case; these goals were again approved by the management team (Id.). Actual sales in 2001 were 1.202 million cases, and promotional expenses averaged $.32 per case (Id.). Defendant sustained a net loss of $104,000.00 in 2001 (Id.). Plaintiff

3

again acknowledged, in deposition testimony, that he bears at least some responsibility for the net loss and promotional expenses (Id.).

Concerned about Tradewinds' net losses in 2000 and 2001, Plaintiff and Kenneth Lichtendahl met to develop an incentive bonus plan that established two goals for Plaintiff: achieving an overall corporate profit of $150,000.00 and keeping promotional expenses at or below $.30 per case (Id.). While the number of cases sold increased 1 percent over 2001 sales, Defendant nevertheless sustained a net loss of $183,000.00 in 2002 (Id.). Promotional expenses averaged $.46 per case (Id.). Yet again, Plaintiff acknowledged in deposition testimony that he bore at least some responsibility for Tradewinds' net loss, as well as for the sales staff's inability to meet the 2002 sales goals (Id.).

In response, Plaintiff contends that a variety of factors impacted Tradewinds' overall lack of profitability, as well as its pricing structure and promotional expenses (doc. 15). Plaintiff asserts that factors contributing to Tradewinds' overall lack of profitability include Defendant's transition from a beer brewer to a tea and juice manufacturer, turmoil in Defendant's distribution chain, Defendant's significant costs in changing co-packers, changes in Defendant's product lines, and

4

Defendant's litigation expenses (Id.). Plaintiff avers that while he did have input into Tradewinds' pricing structure, Defendants' pricing decisions were made with input from other officers and directors (Id.). Furthermore, Plaintiff states that while he also had input into Tradewinds' promotional expenses, Defendants' general view was that exceeding the goals set for promotional expenses was permissible if necessary for stimulating sales (Id.). Finally, Plaintiff argues that he was responsible for bringing several large accounts to Tradewinds and for introducing a new size for Tradewinds' tea products that has sold remarkably well (Id.).

Prior to June, 2002, Plaintiff did not have any medical conditions that impacted his employment with Defendant (doc. 11). In June 2002, Plaintiff passed out while at work and was taken to the hospital (Id.). He was subsequently diagnosed with a benign pituitary tumor on the base of his brain, as well as a 35 percent hearing loss (Id.). While the medication that Plaintiff takes for the brain tumor has successfully managed the condition, it does cause Plaintiff fatigue and tiredness, resulting in the need for an occasional nap during the workday (Id.). Otherwise, Plaintiff's medical conditions did not impact his performance of day-to-day and recreational activities or his other bodily functions, and he remained capable of performing his essential

job functions for Tradewinds (Id.).  While employed by Defendant, Plaintiff did not request any special accommodations for his conditions (Id.).  Moreover, Defendant never treated Plaintiff differently with regard to his job schedule or responsibilities, nor did it limit Plaintiff's ability to take time off for medical office visits (Id.).

On January 5, 2003, Plaintiff was notified by Kenneth Lichtendahl that he was being terminated from his employment with Defendant (Id.).  Kenneth Lichtendahl stated that Plaintiff's termination was "performance driven," as indicated by Tradewinds' failure to post profits, low sales, and exceeded promotional expenses (Id.).  Moreover, Kenneth Lichtendahl made no mention of Plaintiff's age or health condition during the meeting (Id.).  Defendant contends the decision to terminate Plaintiff was a management decision that it was entitled to make (Id.).  Defendant also notes that Plaintiff has no personal knowledge as to how the termination decision was made, including whether Brown, who replaced Plaintiff as Vice-President of Sales, had any role in the decision-making process (Id.).

Conversely, Plaintiff depicts the termination as "abrupt" and surprising to the officers and directors of Tradewinds (doc. 15).  Also, Plaintiff avers that he was unaware his job was in jeopardy prior to January 5, 2003; that he never

received a performance evaluation from Defendant; and that he had never been subject to less severe corrective action as required by Defendant's progressive disciplinary policy (doc. 15).

Additionally, following a special shareholder's meeting, Plaintiff was removed as a director and as a shareholder of Tradewinds (Id.).  Plaintiff avers that other shareholders in Defendant close corporation acknowledged their duty to treat Plaintiff fairly as a minority shareholder (Id.).  Additionally, Plaintiff notes that there is no requirement that a Tradewinds shareholder be employed by the company and that the termination of his employment was the reason offered for his removal from his directorship (Id.).  Plaintiff states further that he had fulfilled all his duties as a director of Tradewinds prior to his termination (Id.).

Plaintiff's replacement, Tim Brown, is 45 years old and suffers from multiple sclerosis (doc. 11).  During Brown's tenure as Vice-President of Sales, Tradewinds made net profits over $200,000 (Id.).  Promotional spending did, however, remain above the target of $.30 per case (doc. 15).

Defendant avers that prior to Plaintiff's termination, Plaintiff never asserted any claims of medical condition or age discrimination (doc. 11).  Defendant similarly notes that Plaintiff neither saw any documents nor heard any statements

7

indicating he was terminated because of his medical condition or age; and he was unaware of any documents or statements that would indicate that he was terminated because of his medical condition or age (Id.).  Defendant also claims Plaintiff has no evidence suggesting that his age was a factor in the termination process (Id.).

Following his termination, Plaintiff learned from Scott Warren (hereinafter "Warren"), a manager at one of Tradewinds' vendors, that Warren had been told by one of Defendant's employees that Plaintiff left for health reasons (doc. 15). Warren is unable to recall which of Defendant's employees made that statement (Id.).  In contrast, Defendant argues Plaintiff has no personal knowledge of Tradewinds' employees notifying third parties of Plaintiff's medical condition (doc. 17). Moreover, Defendant avers that Plaintiff himself revealed to a number of Tradewinds' distributors details concerning his medical condition (Id.).

**ANALYSIS**

**I.   Summary Judgment Standard**

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

8

The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity

9

that the district court can readily identify the facts upon which the non-moving party relies.'" <u>Guarino</u>, 980 F.2d at 405 (quoting <u>Inter-Royal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. <u>McDonald v. Union Camp Corp.</u>, 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

**II. Discussion**

**A. Plaintiff's Age Discrimination Claim**

**1. Plaintiff's <u>Prima Facie</u> Case**

Ohio law prohibits discrimination on the basis of age in employment decisions. O.R.C. § 4112.02(A). Under this provision, Plaintiff may assert a <u>prima facie</u> case through the presentation of either direct or indirect evidence. <u>Allen v. Ethicon, Inc.</u>, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996). In many cases, evidence of direct discrimination can be difficult to

produce, so the law allows for a plaintiff to raise an inference of discrimination through circumstantial evidence. <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). In the case at hand, Plaintiff does not proffer direct evidence of age discrimination. Thus, the Court will focus upon circumstantial evidence in evaluating Plaintiff's <u>prima</u> <u>facie</u> case.

In order to prevail on a circumstantial evidence theory, Plaintiff must establish a <u>prima</u> <u>facie</u> case of age discrimination by proving that (1) he was over forty, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by a substantially younger employee or additional evidence shows that the employer was motivated by Plaintiff's age in making its decision. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308 (1996). The <u>prima facie</u> case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567, 577 (1978). Establishment of the <u>prima</u> <u>facie</u> case in effect creates a presumption that the employer unlawfully discriminated against the employee. <u>Texas Dep't. Of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). For the following reasons, the Court finds that Plaintiff has established a <u>prima</u> <u>facie</u> case of age

discrimination.

Plaintiff argues that he has raised at least a genuine issue of material fact with regard to the existence of a <u>prima facie</u> case (doc. 15).  The parties do not dispute that Plaintiff was over forty, that he suffered an adverse employment action, and that he was replaced by a younger employee.  However, the parties dispute whether as a matter of law Plaintiff was qualified for his position.

The focus at this stage of the analysis should be on Plaintiff's objective qualifications, such as his experience in the particular type of work and demonstrated possession of the required general skills.  See <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 575-76 (6th Cir. 2003).  As the <u>prima facie</u> case is not intended to be burdensome, searching analysis at this stage on whether a plaintiff is "qualified" is improper.  <u>McCrory v. Kraft Food Ingredients</u>, No. 94-6505, 1996 U.S. App. LEXIS 26305 *14 (6th Cir. Oct. 3, 1996).

Defendant cites this Court's decision in <u>Chitwood v. Dunbar Armored, Inc.</u>, 267 F. Supp. 2d 751, 755-56 (S.D. Ohio 2003), for the proposition that Plaintiff must prove he was "performing his job at a level that met his employer's legitimate expectations in order to show that he was qualified for continued employment."  More specifically, Defendant emphasizes the

following language from Chitwood:

> The Court concludes that though poor
> performance has been considered by the Sixth
> Circuit in considering the qualification
> prong of the prima facie case, poor
> performance only precludes a prima facie case
> where plaintiff concedes he was not
> performing at a level that met his employer's
> legitimate expectations.

Id. at 756.

In the case at hand, Defendant asserts that Plaintiff's admission that he failed to meet his specific goals for sales and promotional expenses in 2000, 2001, and 2002 precludes him from establishing a prima facie case for age discrimination (doc. 17). Similarly, Defendant asserts that because Plaintiff acknowledges that he bore at least some responsibility for the losses Defendant sustained in 2000, 2001, and 2002, Plaintiff is unable to establish a prima facie case (Id.). But Defendant's characterization of Plaintiff's admissions of failure to meet specific goals disregards the fact that Plaintiff offers a number of justifications for having not met those `goals and for Defendant's overall unprofitability (doc. 15).

The Court finds Plaintiff's citation to Wexler, 317 F.3d 564, and Cline v. Catholic Diocese of Toledo, 206 F.3d 651 (6th Cir. 1999), persuasive for the proposition that he has adequately established that he was objectively qualified. The

Wexler decision confirms that the focus at this time should be on Plaintiff's objective qualifications, such as his experience in the industry and his demonstrated possession of the required general skills. Wexler, 317 F.3d at 574-76. The Court notes Kenneth Lichtendahl's deposition testimony that Plaintiff possessed the required background for the Vice-President of Sales position (doc. 15). Plaintiff worked more than 8 years for Defendant and Defendant's predecessor, Hudepohl, during which time Brown and Casey Lichtendahl characterized him as a good supervisor and as someone with a solid work ethic (doc. 15).

Drawing all reasonable inferences in favor of Plaintiff, these facts show Plaintiff was qualified for his position. Thus, the Court finds that Plaintiff has established each prong of his prima facie case for age discrimination.

### 2. The Legitimacy of the Termination Claim

The burden shifts to Defendant, therefore, to rebut the presumption of discrimination by producing evidence that Plaintiff was terminated, or someone else was preferred, for a legitimate, nondiscriminatory reason. Texas Dep't. Of Community Affairs v. Burdine, 450 U.S. at 254. Defendant need not persuade the court that it was actually motivated by the proffered reasons. (Id. citing Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 (1978)).

14

It is sufficient if Defendant's evidence raises a genuine issue of fact as to whether it discriminated against the Plaintiff. (Id.). To accomplish this, Defendant must clearly set forth, through the introduction of admissible evidence, the reasons for Plaintiff's rejection. (Id. at 255). The explanation provided must be legally sufficient to justify a judgment for the Defendant. (Id.). If Defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. (Id.). Placing this burden of production on the Defendant thus serves simultaneously to meet Plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that Plaintiff will have a full and fair opportunity to demonstrate pretext. (Id. at 255-56). The sufficiency of Defendant's evidence should be evaluated by the extent to which it fulfills these functions. (Id. at 256).

In the present case, Defendant has articulated a number of legitimate, non-discriminatory reasons for Plaintiff's termination (doc. 11). These include the failure to meet sales and marketing expenses goals, the failure to increase sales, and the failure to establish overall profitability (Id.). As Plaintiff does not dispute that Defendant's articulated reasons

for Plaintiff's termination are legitimate and non-
discriminatory, the Court will not address them further but will
proceed to the evaluation of Plaintiff's assertion that these
reasons are a pretext.

### 3.   Defendant's Articulated Reason as Pretext

Plaintiff retains the burden of persuasion. <u>Manzer v.
Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1084 (6th Cir.
1994). He now must have the opportunity to demonstrate that
Defendant's proffered reason was not the true reason for the
employment decision. <u>Wilson v. Firestone Tire & Rubber Co.</u>, 943
F.2d 510, 517 (6th Cir. 1991). Plaintiff may succeed in this by
showing both that Defendant's proffered reasons are factually
untrue, and that discrimination was the real reason for the
adverse employment action. <u>Peters v. Lincoln Electric Co.</u>, 285
F.3d 456, 470 (6th Cir. 2002), <u>St. Mary's Honor Ctr. v. Hicks</u>,
509 U.S. 502 (1993). Plaintiff can prove pretext by showing that
1) the articulated reasons are not supported by the facts as
revealed by the evidence; 2) the articulated reason or reasons
did not actually motivate the termination; or 3) the articulated
reasons were insufficient to warrant the termination. <u>Manzer</u>, 29
F.3d 1078, 1084. Because Plaintiff makes no attempt to refute
Defendant's proffered reasons for terminating Plaintiff as not
based in fact as revealed by the evidence (doc. 17), the Court

16

will focus upon the second and third means of proving pretext under Manzer.

### a.    Plaintiff Argues Poor Performance Did Not Really Motivate His Termination.

Plaintiff raises two arguments for the proposition that Defendant's proffered reasons for terminating him are pretext (doc. 15). Plaintiff argues first that Brown, who was outside of the Plaintiff's protected age class and who assumed Plaintiff's position after he was terminated, was treated better than he because Brown was not terminated for exceeding the marketing expenditure goal of $0.30 per case (Id.). Defendant responds, based on Gover v. Speedway Super America, LLC, 284 F. Supp. 2d 858, 865 (S.D. Ohio 2003), that in order to show that a person outside of the protected class was treated more favorably than himself, Plaintiff must show he and such person were "engaged in substantially identical conduct" (doc. 17). In this context, Defendant continues, similarly situated means that both Plaintiff and Brown

> have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

(Id. citing Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)). Defendant argues Plaintiff and Brown

17

are not similarly situated, taking into account Plaintiff's more than eight years' experience as Vice-President of Sales, the last three of which were characterized by unmet sales and promotional expense goals and net losses (Id.).  In contrast, Defendant argues, Brown assumed the same position and within his first year, profits were posted (Id.).  These facts, Defendant argues, show the conduct of Plaintiff and Brown, as evidenced by their respective profit performance, can be differentiated clearly (Id.).  Consequently, the two are not similarly-situated (Id.). The Court finds Defendant's arguments well-taken, as it is clear that Plaintiff and Brown did not engage in substantially identical conduct.

Plaintiff's second argument in support of his theory of pretext is based upon Warren's statement to Plaintiff that one of Defendant's employees told Warren that Plaintiff left Tradewinds due to health problems (doc. 15).  Plaintiff argues that such statement serves as evidence that Defendant has articulated a reason other than his performance as a basis for his termination (Id.).  Citing to Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986), Plaintiff maintains that Defendant's articulation of two different reasons for the termination may lead the fact finder to conclude that Defendant's proffered reason was pretext. Defendant responds that the conversation Plaintiff had with

18

Warren does not discuss any reason for Plaintiff's termination, cannot be linked to any Tradewinds' employee, and constitutes hearsay under Fed. R. Evid. 802. (doc. 17). The Court agrees with Defendant that this hearsay statement does not adequately serve as the articulation of a reason for his termination other than Plaintiff's performance. It is a grand stretch to attribute such a statement to the company, much less any decision-maker involved in his termination, when Plaintiff cannot even indicate who made the statement. See Hopkins v. Electronic Data Systems Corp., 196 F.3d 655, 661 (6th Cir. 1999)(Generally, discriminatory statements by a non-decisionmaker, standing alone, do not support an inference of discrimination). Consequently, Duchon does not apply in this instance.

### b. Plaintiff Argues Defendant's Articulated Reasons Are Insufficient to Warrant Termination.

Plaintiff contends that any concerns about his performance, when counterbalanced by his successes as Vice President of Sales, were not severe enough to justify his termination (doc. 15). Plaintiff argues that Tradewinds profitability problems were rooted in many challenges related to the conversion of the company from a beer manufacturer to a manufacturer of tea and juice (Id.). Many distributors of company's products, who formerly distributed beer, were not

committed to the distribution of non-alcoholic beverages (Id.). The company also changed co-packers in the year 2000 which accounted for well over half of the loss reported for that year (Id.). Changes in the product line, Plaintiff argues, similarly resulted in losses (Id.). Finally, Plaintiff argues, litigation with a distributor in 2002 accounts for more than half the year's loss for that year (Id.). Taken together, Plaintiff argues, these many factors negatively impacted Tradewinds' bottom line (Id.). Consequently, argues Plaintiff, Defendant cannot legitimately put the blame on him unilaterally (Id.). All of these factors, argues Plaintiff, were not exclusively under his control (Id.). Decisions regarding sales prices and marketing prices were similarly not exclusively under his control (Id.). In addition to arguing about his lack of full responsibility for losses, Plaintiff describes his successes during his tenure as Vice-President of Sales, including developing a number of new accounts and contacts and introducing a new product (Id.).

Defendant, on the other hand, points to its financial records, sales reports, and marketing expenses to show Plaintiff's underperformance in relation to goals and the company's overall lack of profitability under Plaintiff's leadership as Vice-President of Sales (doc. 11). Plaintiff, too, acknowledges at least to some degree, his responsibility for

20

improving the company's profitability and for meeting sales and marketing expense goals, even while factors beyond his control also impacted profitability (Id.).    Defendant further argues, based on Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir. 1986), Lewis v. Rucker, 721 F. Supp. 929 (S.D. Ohio 1989), and Bush v. Am. Honda Motor Co., Inc., 227 F. Supp. 2d 780 (S.D. Ohio 2002) that a business is entitled to make employment decisions that will not be overturned by the courts, so long as such decisions are not discriminatory in nature (doc. 11).  Defendant argues that "'Courts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions'" (Id. citing  Bush, 227 F. Supp. 2d at 797, citing Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1007 (7th Cir. 2002)).

In the light of the hard financial facts proffered by Defendant, the Court does not find merit in Plaintiff's argument that Defendant's justification for his termination is insufficient.  The record shows abundant evidence that Defendant terminated Plaintiff based on valid business judgment.

In summary, while Plaintiff is able to make a prima facie case of age discrimination, he has offered no persuasive evidence showing that Defendant's proffered reasons are merely pretext for age discrimination.  Defendant is correct that Plaintiff is unable to show "that the sheer weight of the

circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext." <u>Manzer</u>, 29 F.3d at 1084. Therefore Plaintiff is unable to show that Defendant's proffered legitimate, non-discriminatory business reasons for terminating him were pretext. Defendant's evidence is therefore "so one-sided" that it must "prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

**B.  Plaintiff's Disability Discrimination Claim**

Ohio law also prohibits discrimination on the basis of an employee's disability status. O.R.C. § 4112.02(A). Under this provision, Plaintiff may assert a <u>prima facie</u> case through the presentation of either direct or indirect evidence. <u>Allen v. Ethicon, Inc.</u>, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996). Similar to his age discrimination claim, Plaintiff does not suggest that there is any direct evidence of disability discrimination. Thus, the Court will focus upon circumstantial evidence in evaluating Plaintiff's <u>prima facie</u> case.

In order to prevail on a circumstantial evidence theory, Plaintiff must establish a <u>prima facie</u> case of disability discrimination by proving that (1) he was "disabled" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12112 (hereinafter "ADA"); (2) he was qualified for the position, with or without an accommodation; (3) he suffered an adverse

employment decision with respect to the position in question; and (4) a non-disabled person replaced him. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 882 (6th Cir. 1996). The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978). Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. Texas Dep't. Of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). For the following reasons, the Court finds that Plaintiff has not established a prima facie case of disability discrimination.

Plaintiff argues he has raised at least a genuine issue of material fact with regard to the existence of a prima facie case (doc. 15). Defendant, however, avers that Plaintiff cannot meet the fourth element of his prima facie case for disability discrimination, namely, that he was replaced by a non-disabled individual (doc. 17). The Court finds this assertion well taken. Plaintiff was replaced by Brown as Vice-President of Sales, and Brown suffers from multiple sclerosis (Id.). Further, Plaintiff does not dispute that Brown's condition is a disability under the meaning of the ADA (Id.). Thus, Plaintiff fails to make his

23

prima facie case.

As Plaintiff is unable to make a prima facie case of disability discrimination, Defendant must be granted summary judgment as a matter of law as to Plaintiff's claim for disability discrimination.

**C.  Plaintiff's Breach of Fiduciary Duty Claim**

Ohio courts have held that majority shareholders in a close corporation owe minority shareholders a heightened fiduciary duty. Crosby v. Beam, 47 Ohio St. 3d 105 (1989); Gigax v. Repka, 83 Ohio App. 3d 615 (1992). Because of this heightened fiduciary duty, a minority shareholder can be removed only for legitimate business reasons. Gigax, 83 Ohio App. 3d 615.

In the present matter, the parties do not dispute that Defendant is an Ohio close corporation or that Plaintiff was a minority shareholder in that close corporation. Defendant has offered a host of legitimate business reasons for Plaintiff's termination, including the Defendant's poor overall financial performance from 2000 until 2002, as well as Plaintiff's acknowledgment of some degree of responsibility for the unattained sales and promotional expenditure goals from 2000 until 2002 (doc. 11). Moreover, Defendant notes that Plaintiff does not allege that, as a minority shareholder, he was not informed about Tradewinds' financial performance. Nor can

Plaintiff argue that he was not permitted to attend directors' meetings, or that he was unable to participate in Defendant's management (doc. 17). The Court finds no merit in Plaintiff's claim for breach of fiduciary duty to a minority shareholder, as Defendant has proffered legitimate reasons for Plaintiff's removal. Therefore this claim fails as a matter of law.

**D.  Plaintiff's Punitive Damages Claim**

As a final matter, Defendant challenges Plaintiff's request for punitive damages. Questions relating to punitive damages are not dispositive, and are appropriately addressed in a damages calculation if liability is determined. In this case, as the Court has found Plaintiff's underlying claims subject to summary judgment, there is no basis for punitive damages.

**CONCLUSION**

Having reviewed this matter, the Court finds Defendant's motion for summary judgment well-taken. Plaintiff has failed to rebut Defendant's legitimate nondiscriminatory justification for his termination, his alleged poor performance, as pretext. Plaintiff further fails to assert a prima facie case for disability discrimination, and the Court finds no merit in Plaintiff's claim for breach of fiduciary duty. Accordingly, the Court hereby GRANTS the Motion for Summary Judgment of Defendant Tradewinds Beverage Company (doc. 11) in all respects, and

DISMISSES this case from the Court's docket.

   SO ORDERED.


Dated: September 21, 2005  s/S. Arthur Spiegel
              S. Arthur Spiegel
              United States Senior District Judge